MARY F. FEDERICI AND FRANK FEDERICI, HER HUS-
BAND, PLAINTIFFS-RESPONDENTS, v. ATLANTIC CITY
AND SHORE RAILROAD COMPANY, A CORPORATON,
DEFENDANT-APPELLANT.

Argued October 6, 1942—Decided March 17, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and
PORTER.

For the plaintiffs-respondents, *John B. Baratta.*

For the defendant-appellant, *George A. Bourgeois* (*Eugene
N. Harris,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The plaintiff had a judgment in
the Common Pleas Court of Atlantic County for personal
injuries and the defendant appeals. The facts may be briefly
stated as follows:

Mrs. Federici (the plaintiff), her daughter-in-law, and
three small boys, her nephews, were passengers on one of the
defendant's trolley cars in Atlantic City and on the day in
question, when all of them were alighting from the car, she
fell and was injured. The trolley car was under the sole
management of the motorman who operated it and attended
to the collection of fares as well. In the front of the car were
two separate doors (Nos. 1 and 2). In the center of the car
were two other doors, with a handrail between them (Nos.
3 and 4). The door which we may call the No. 3 exit was the

one towards the front of the car; No. 4 exit was the one toward the rear. Both center doors operated as a unit. The plaintiff's daughter-in-law left the car first by exit No. 3; the three small boys were leaving the car by exit No. 4. The plaintiff testified that as she was leaving the car by door No. 3 she had one foot, her right, partly on the ground, her left foot still on the lowest step of the car, when the door struck her on the left leg, causing her fall, as a result of which she was injured. On cross-examination she denied that any of the three children preceded her in leaving the car by way of the third exit which she used or that one of the boys came under the rail separating the exits and in so doing bumped into her and caused her to fall. She also stated that she did not fall to the ground but on the step of the car.

Four witnesses, passengers in the car at the time of the happening, who saw the accident, were produced by the defendant. Each of them testified that one of the small boys "ducked" under the railing which separated the third and fourth exit, bumped into the plaintiff and caused her to fall and that the door of the car at no time collided with the plaintiff. The three boys were called in rebuttal. Each denied that he had gone under the rail separating the doors and bumped into the plaintiff. On the contrary, their testimony was uniform that they had left the car by way of door No. 4.

There was also testimony from the defendant that the opening and closing of the doors was not done by manual operation but by an electrical device; that this device had been inspected on January 23d, prior to the accident (which happened on February 8th) and again on February 12th, after the accident, and that the apparatus on these occasions operated properly and required no repairs. The doors are controlled by an electric current which is "set" by the motorman turning a switch in front of the car. The circuit is completed when the passenger steps from the floor of the car to the first step of the exit, when the door opens, and the door does not close so long as pressure, eight to twelve pounds, is exerted on the bottom step. When the passenger's weight is removed from the bottom car-step the door closes in three seconds.

Two grounds of appeal are listed. The first challenges a part of the trial judge's charge as erroneous under the facts of the case and the second asserts an abuse of discretion in refusing to grant a new trial on the question of liability. An exception was taken to the following excerpt from the court's charge: "You may infer, if you so choose, that aside from any active fault of the motorman, the closing of this mechanically operated door in this instance was unusual in its suddenness, and in the event that you do draw this inference you can find that the defendant company's care over its contrivance did not measure up to that high degree which the law demands that it exercise over its equipment." Contrasted with this, the negligence charged in the fifth paragraph of the complaint is that the defendant "did so negligently, carelessly and recklessly manage, operate and control its car; to wit, the door of the same reserved for the exit of the plaintiff and other passengers that without signal, warning or indication of any kind it caused the said door to hit, strike, close upon and against the body of the plaintiff," &c. It is therefore clear that the plaintiff's claim is based on the negligent operation of the door. The court said that aside from any active fault of the motorman the jury was privileged to infer that the "closing of this mechanically operated door in this instance was unusual in its suddenness." We find no testimony that the door was closed with "unusual" suddenness. The proof was uncontradicted that the motorman had no control over the opening or closing of the car doors once the electrical device was "set" (*i. e.*, in control of their opening and closing) as it was in this case; and the further testimony of the plaintiff was that she fell on the steps of the car. It is obvious then that her weight had not been removed from the steps when she fell. The instruction to the jury, quoted above, was without any support in the proofs. It permitted the jury to speculate about the matter. There was no testimony whatsoever of any mechanical errancy in the operation of the door, or any proof of the normal manner of its operation except from the defendant and no testimony to justify the inference that on this occasion it closed in any but the normal manner. To conclude, the complaint charged negli-

gence in general terms in managing, operating and controlling the door. The charge, as challenged, permitted the jury to find negligence on the part of the motorman in closing the door or an errancy in the device for closing the door which could be negligence on the part of the defendant. There was no proof to support the latter proposition and therefore it was error to instruct the jury that they might find the defendant answerable in negligence for it.

The judgment should be reversed, and a *venire de novo* allowed, costs to abide the event.